United States District Court
Southern District of Texas
**ENTERED**
January 23, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HAROLD DAVIS, | § | |
| TDCJ # 01838671, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-3856 |
| | § | |
| CAPT. T. LEE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Harold Davis, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), claims that prison officials were deliberately indifferent to the risk posed to him by malfunctioning equipment on his work site in a prison laundry facility.  The defendants have filed a motion for summary judgment (Dkt. 35) and seek dismissal of all claims.  Davis responded (Dkt. 40), and the motion is ripe for decision.  After reviewing the pleadings, the motion, the briefing and evidence submitted, the applicable law, and all matters of record, the Court concludes that the defendants' motion for summary judgment should be **denied**.  Davis' request for appointed counsel, which the Court previously denied without prejudice, is now **granted**. This case will be **stayed** and **administratively close**d while the Court locates *pro bono* counsel to represent Davis.

## I.    BACKGROUND

At the times relevant to this suit, Davis was assigned to the Estelle Unit. He sues

1 / 16

four defendants at the Estelle Unit: Captain Thomas Lee, laundry captain; Officer Sanitra Adair, laundry supervisor; Officer Patricia Justice, laundry supervisor; and, Officer Alma Carter, laundry supervisor. Davis claims that, when working in the laundry facility as a "presser operator," he suffered serious injuries caused by a malfunctioning steam presser. He also claims that he had reported the malfunction to the defendants and that they failed to address the problem despite being aware of the risks, which included serious burns, concussions, broken bones, and death. As relief for his claims, he seeks compensatory and punitive damages. *See* Dkt. 21 (more definite statement); Dkt. 23-1 (amended complaint); Dkt. 40 (response).

On November 16, 2017, the lid of the malfunctioning steam presser crashed down on Davis' head, causing injuries to his neck, lower back, head, and spine. On the day of the accident, Davis received emergency medical care at TDCJ. He states that he was transported to Huntsville Memorial Hospital by ambulance after an x-ray at TDCJ showed a possible neck fracture. He further states that, because of his injuries, he had two surgeries at John Sealy Hospital in Galveston: one on his neck in June 2019 and the second on his lower back in July 2019. He continued to receive medical care for his injuries through at least 2021. *See* Dkt. 21, at 2-6; Dkt. 23-1, at 3-8; *id.* at 15-61 (medical records)).[1]

Davis has made specific allegations regarding each of the four defendants. He claims that Captain Lee, the senior supervisor in the laundry department, was aware in

---

[1]    Davis states that he is not aware of an investigation into the accident by the Office of the Inspector General or any other TDCJ entity (Dkt. 21, at 12-13).

October 2017 of the risk posed to Davis by the malfunctioning presser because Davis, along with other inmates, reported the risk to Lee and "showed him how the machine was slamming shut" (Dkt. 21, at 6). He alleges that Lee told him to "be careful when using [the machine]," but failed to take the malfunctioning pressure out of use (*id.*). He states that Lee was not present on the day of the accident, but that Lee supervised other officers in the laundry department and had "told his [sergeants] to write up anyone that refused to work" on the pressers (*id*. at 7).  He further states that refusing to work is a "level 2 offense" that can lead to a major disciplinary case against the inmate (*id.*)

Regarding Sergeant Adair, Davis states that she was present on November 16, 2017, the day of the accident, and rushed Davis to the infirmary.  He alleges that he personally reported the problem with the presser to Adair in October 2017 and showed her how the lid slammed down.  He further alleges that Adair told him to tell Captain Lee about the problem, but otherwise "did nothing" to protect the inmates' safety.  He claims that, although Adair "agreed with the inmates" that the presser was dangerous, she would have written a disciplinary case against him if he had refused to work with the presser (*id*. at 7-8).

Regarding Sergeant Carter, Davis alleges that inmates had shown Carter in October 2017 how the presser lid was slamming down, but that she refused to place an out-of-order sign on the presser or otherwise act to protect Davis and the other inmates. He also states that Carter had verbally informed Davis that she would write a disciplinary case against any inmate who did not perform assigned work in the laundry (*id*. at 8-9).

Regarding Sergeant Justice, Davis states that he and other inmates informed Justice in October 2017 of the risk from the steam presser and showed her the problem.  He alleges that Justice failed to report the malfunctioning equipment and that she told Davis that, if he did not perform his assigned work, he would receive a disciplinary case (*id*. at 9-10).

Davis acknowledges that he did not exhaust his administrative remedies before filing this lawsuit.  He claims, however, that officials at the Estelle Unit interfered with the grievance process.[2]  He states that he filed a Step 1 grievance about the presser and, after he got no response for three months, filed another grievance, but never received a response to either (Dkt. 21, at 11-12; Dkt. 23-1, at 8-10; Dkt. 40, at 1-2).[3]  He alleges that Lieutenant Goodall, who is not a defendant in this case, told him "to stop filing grievances before [he] receive[d] a major [disciplinary] case" (Dkt. 21, at 12).  He also states that he feared retaliation from officers if he filed further grievances, such as "false allegations of [him] assaulting an officer" or "planting contraband on [him] or in [his] property" (*id*.).  Davis claims that officials' interference with his grievances, and their refusal to process his Step 1 grievances, prevented him from filing a Step 2 grievance and from fully exhausting his remedies.

---

[2]      In his amended complaint, Davis sued an unnamed grievance officer at the Estelle Unit as a fifth defendant, alleging that the officer failed to respond to his administrative grievance and therefore prevented him from exhausting his administrative remedies before filing suit (Dkt. 23-1, at 9-10).  The Court did not order an answer from the unnamed officer (Dkt. 25, at 4).

[3]      Although Davis' earlier filings stated that he had copies of the unprocessed Step 1 grievances (Dkt. 6, at 4), his summary judgment response states that he no longer has his copies because TDCJ "lost all of [his] personal property" including copies of the Step 1 grievances (Dkt. 40, at 1-2; *see id.* at 3 (stating that TDCJ takes an inmate's property every time the inmate goes "on a chain" off the unit)).

Defendants answered the complaint (Dkt. 26; Dkt. 29) and have filed a motion for summary judgment (Dkt. 35) seeking dismissal of Davis' claims.

## II   STANDARDS OF REVIEW

### A.   Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (cleaned up).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (cleaned up). A plaintiff's statements may be sufficient to demonstrate a genuine issue of material fact. *See Bourne v. Gunnels*, 921 F.3d 484, 492-

93 (5th Cir. 2019).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."  *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (cleaned up); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.  Evidence not referred to in the response to the motion for summary judgment is not properly before the court, even if it exists in the summary judgment record.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### B.  <u>Qualified Immunity</u>

The defendants have invoked qualified immunity, and the plaintiff bears the burden to negate the defense.  *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (cleaned up); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) (cleaned up). "If officers of reasonable competence could disagree as to whether the plaintiff's rights

were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (cleaned up). A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

On summary judgment, the plaintiff has the burden to point out clearly established law regarding the right in question and to raise a fact issue as to the violation of that right. *See Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021); *Amador v. Vasquez*, 961 F.3d 721, 726-27 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1513 (2021); *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016). A court must properly credit the plaintiff's evidence. *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present absolute proof, but must offer more than mere allegations." *King*, 821 F.3d at 654 (cleaned up).

### C.   *Pro Se* Filings

In reviewing the pleadings, the court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory.  *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Although the plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).  Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court.  *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts.  *Pro se* litigants must properly . . . present summary judgment evidence") (cleaned up).

## III.   <u>DISCUSSION</u>

The defendants seek summary judgment on two grounds: (1) Davis' failure to exhaust his administrative remedies and (2) qualified immunity.

### A.   <u>Exhaustion of Administrative Remedies</u>

The defendants first argue that Davis' claims should be dismissed because he failed to fully exhaust his administrative remedies. Under the PLRA, inmates bringing an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust all administrative

remedies "as are available." 42 U.S.C. § 1997e(a).  *See Ross v. Blake*, 578 U.S. 632 (2016); *Jones v. Bock*, 549 U.S. 199 (2007).  A prisoner must exhaust before filing a federal complaint, and "[i]t is irrelevant whether exhaustion is achieved during the federal proceeding." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.  The TDCJ has a two-step formal grievance process, and an inmate must pursue a grievance through both steps for the claim to be considered exhausted.  *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

The exhaustion requirement is mandatory and strictly enforced.  *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 789-90 (5th Cir. 2012), *as corrected* (Feb. 20, 2013); *Dillon*, 596 F.3d at 268.  The PLRA does not allow a district court to make a "special circumstances" exception to the exhaustion provision to permit prisoners "to pursue litigation even when they have failed to exhaust available administrative remedies." *Ross*, 578 U.S. at 635; *see Gonzalez*, 702 F.3d at 788 ("District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint").  Rather, the only exception is "that statute's built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'" *Ross*, 578 U.S. at 635-36.

As the Fifth Circuit has explained, *Ross* set out several instances in which administrative remedies may be deemed "unavailable":

> An administrative remedy may be unavailable if (1) despite what regulations or materials may promise, prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates," (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use" by an ordinary prisoner, or (3) prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Brantner v. Freestone Cty. Sheriffs Office*, 776 F. App'x 829, 833 (5th Cir. 2019) (quoting *Ross*, 578 U.S. at 643-44); *see Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) (stating that grievance procedures are *"unavailable"* to an inmate if the correctional facility's staff misleads an inmate "so as to cause the inmate to fail to exhaust such process"). However, an inmate's "ignorance of the grievance procedures, without more, is no basis to deem them unavailable." *Id.*

In this case, the defendants submit Davis' grievance records from August 1, 2017, through February 26, 2022, totaling approximately 30 pages, accompanied by a business records affidavit from a custodian of records for TDCJ's inmate grievance department (Dkt. 35-1). Citing generally to the grievance records, the defendants argue that, because their records contain no grievances from Davis about his injury from the laundry presser, Davis failed to exhaust his administrative remedies (Dkt. 35, at 11-12). They also argue that the grievance records demonstrate that Davis knew how to utilize the grievance process, since their records reflect that he pursued five Step 2 grievances between 2017 and 2022 (*id.* at 11 & n.1; Dkt. 35-1). They do not state whether TDCJ officials searched for unprocessed grievances filed by Davis or conducted any investigation on the issue.

Davis agrees that he knew how to use the grievance process and argues that this fact

supports his position that he filed grievances about the laundry presser. *See* Dkt. 40, at 2 ("If I filed all the grievances they are able to show then why wouldn't I have filed one that time?"). He argues that officials at the Estelle Unit prevented him from exhausting his remedies because, when they failed to process his Step 1 grievances, they prevented him from filing a Step 2 grievance and completing the process (Dkt. 21, at 11-12; Dkt. 23-1, at 8-10; Dkt. 40, at 1-2).

The defendants bear the burden of proof on exhaustion, which is an affirmative defense. *Dillon*, 596 F.3d at 266. They also bear the burden under Rule 56 to demonstrate the absence of a genuine issue of material fact regarding exhaustion. Here, the defendants' presentation of a set of grievances, and the fact that the grievance records do not include the unprocessed grievances to which Davis refers, does not warrant summary judgment in their favor. In light of Davis' statements about his unprocessed grievances, which are specific and based on his personal knowledge, the Court cannot conclude, as a matter of law, that exhaustion was "available" to Davis under 42 U.S.C. § 1997e(a). *See Ross*, 578 U.S. at 644 (an administrative grievance procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"); *see also Prescott v. Plybol*, 855 F. App'x 952 (5th Cir. 2021) (reversing dismissal on exhaustion grounds); *Brantner*, 776 F. App'x at 833-34 (same); *Mobley v. Vine*, No. 21-40814, 2022 WL 4395711 (5th Cir. Sept.

23, 2022) (same); *Jones v. Givens*, No. 19-50465, 2021 WL 3889295 (5th Cir. Aug. 30, 2021) (same).[4]

The defendants' motion for summary judgment on exhaustion grounds will be denied.

### B.   <u>Qualified Immunity</u>

The defendants also seek summary judgment based on qualified immunity. Davis' claim about conditions in his prison workplace arises under the Eighth Amendment.  *See Taylor v. Riojas*, 141 S. Ct. 52 (2020); *Hinojosa v. Livingston,* 807 F.3d 657, 664-65 (5th Cir. 2015). To plead an Eighth Amendment claim based on conditions of confinement, an inmate must allege "conditions that pose a substantial risk of serious harm" and that the defendants were "deliberately indifferent" to his health or safety.  *Id.* at 665.  Deliberate indifference is an "extremely high standard."  *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge."  *Hinojosa*, 807 F.3d at 665.

> [A] prison official acts with deliberate indifference when he knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* (cleaned up) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

---

[4]     The defendants also argue that Davis' allegations that Goodall threatened to file a disciplinary case against Davis if he filed additional grievances are insufficient to defeat summary judgment (Dkt. 35, at 12-14; *see* Dkt. 35-2 (affidavit regarding grievance procedures); Dkt. 35-3 (Goodall's payroll records)).  Given the determination above that summary judgment must be denied based Davis' statements that officials failed to process his Step 1 grievances, the Court need not and does not address this issue.

Here, Davis claims that the laundry presser posed a risk to his safety, that he informed the defendants of this risk in October 2017, that the defendants failed to address the issue, and that the presser caused him serious injury in November 2017. He alleges that Captain Lee told him to "be careful" but that Lee and the other defendants continued to require Davis to work with the malfunctioning presser and threatened to write a disciplinary case against him if he did not perform his job duties.

The defendants seek summary judgment on three grounds. First, they argue that they are entitled to qualified immunity because Davis "failed to show that Defendants were aware of, and disregarded, an excessive risk to his safety" as required to show deliberate indifference (Dkt. 35, at 17). Their brief asserts that, after Davis reported the malfunctioning presser, the defendants "believed" that the instruction for Davis to "be careful" was "sufficient" to address the safety issue (*id.*). However, although the defendants pleaded in their answer that they acted "at all times relevant" with a "reasonable belief" that their actions complied with the law (Dkt. 26, at 3; Dkt. 29, at 3), their summary judgment motion presents no affidavits or declarations to support a belief by any individual defendant that the instruction to "be careful" sufficed to address the specific risk reported by Davis. Additionally, although the briefing states that the defendants' "incorrect judgment" regarding the safety of the malfunctioning presser is insufficient to show deliberate indifference (Dkt. 35, at 17), the defendants present no evidence that any defendant made a judgment that, under the circumstances, the presser was safe for Davis to operate. Davis, however, presents his statements that the defendants recognized a

substantial risk to his safety but disregarded it, including his statements that Lee advised him to be careful and that Adair agreed that the presser was dangerous, but that all defendants required him to continue working with the machine (Dkt. 21, at 6-10; Dkt. 23-1, at 3-5; Dkt. 40, at 2). Davis' statements are competent summary judgment evidence. *See Bourne*, 921 F.3d at 492-93 (sworn and unsworn declarations presented by inmate demonstrated genuine issue of material fact); *Perez v. Collier*, No. 20-20036, 2021 WL 4095263, at *3 (5th Cir. Sept. 8, 2021) (declaration under penalty of perjury was competent summary judgment evidence). Davis has demonstrated a genuine issue regarding deliberate indifference, which is material to the Eighth Amendment issue before the Court.

Second, the defendants argue that they did not violate a clearly established constitutional right. As with their first argument, the defendants rely on their contention that, because they did not know of or disregard an excessive risk to Davis, Davis cannot demonstrate deliberate indifference. *See* Dkt. 35, at 18 ("Defendants' actions at most amount to ineptitude or negligence"). For the reasons stated above, Davis' statements that the defendants were aware of the malfunctioning presser and refused to address the issue are sufficient to demonstrate a genuine issue of material fact on this point.

Third, the defendants argue that their actions were "objectively reasonable at all times relevant" (*id*. at 19). This argument again relies on a statement in the briefing that, after Davis reported the malfunctioning presser lid to the defendants, the defendants "believed" that the presser was nevertheless safe (*id*.). As noted above, Davis' statements

that the defendants were aware of the risk but refused to address it are sufficient to show a genuine issue of material fact.

Because "there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question." *See Tucker*, 998 F.3d at 172 (cleaned up). The defendants' motion for summary judgment on qualified immunity grounds will be denied.

### C.    Appointment of Counsel

A district court may appoint counsel to advance the proper administration of justice in exceptional circumstances and where an indigent litigant has colorable claims that will not receive a meaningful hearing without counsel. *See* 28 U.S.C. § 1915(e)(1); *Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015); *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982). When deciding whether to appoint counsel, the Court considers the type and complexity of the case, whether the indigent litigant can adequately investigate and present his case, and the level of skill required to present the evidence. *Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007).

In this case, the Court previously denied Davis' requests for appointed counsel but stated that it would reconsider the request, if warranted, at a later stage of the case (Dkt. 37). The Court now finds that trained counsel would benefit Davis to assure proper presentation of his claims regarding exhaustion issue and the Eighth Amendment. The

Court therefore will stay and administratively close this case while it locates volunteer counsel.[5]

## IV.   **CONCLUSION**

For the reasons stated above the Court now **ORDERS** as follows:

1.      The defendants' motion for summary judgment (Dkt. 35) is **DENIED**.

2.      This case is **STAYED** and **ADMINISTRATIVELY CLOSED** while the Court locates *pro bono* counsel for Davis.

The Clerk will provide copies of this order to the parties.

SIGNED at Houston, Texas, on _____ January 23 _____, 2023.


_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

---

[5]      The exhaustion issue is typically resolved by the Court, not a jury, prior to a trial on the merits. *See Dillon*, 596 F.3d at 273.  Therefore, upon reinstatement of the case, the Court will entertain requests from counsel for discovery or an evidentiary hearing on the exhaustion issue.

16 / 16